Rollie Winter Agency, Inc., Respondent, v. First Central Mortgage, Inc., Appellant.

*No. 75–102. Submitted on briefs December 2, 1976.—*
*Decided January 6, 1977.*
(Also reported in 248 N. W. 2d 487.)

For the appellant the cause was submitted on the brief of *Bachman, Cummings & McIntyre* of Appleton.

For the respondent the cause was submitted on the brief of *Abraham Sigman* and *Sigman, Shiff, Janssen & Zoesch* of Appleton.

BEILFUSS, C. J. The facts as set forth in the complaint, in substance, are as follows:

The defendant-appellant, First Central Mortgage, Inc., owned a farm located in the town of Harrison, Calumet county, Wisconsin. First Central and the plaintiff-respondent, Rollie Winter Agency, Inc., entered into an agreement where First Central listed the farm for sale with the agency for the period of July 25, 1973 to August 25, 1973. The agreement was drafted by the president of First Central, Nicholas T. Gilbert. It was not a general listing but was specifically intended for negotiation and sale of the farm to Mr. Freeland Rusch.

The real estate brokerage agency displayed the property to Rusch, and on two occasions Gilbert met Russell Meerdink, the representative of the agency, and Mr. and Mrs. Rusch at the farm.

On August 22, 1973, the agency made an offer on behalf of Rusch to First Central. The offer differed substantially with the terms of the listing contract. Gilbert authorized the agency to make a counter offer involving additional property and a different price than was stated in the listing contract. On Friday, August 24, 1973, First Central's counter offer was relayed to Rusch, who expressed interest in it. Gilbert had advised Meerdink that if Rusch was interested in the counter offer he would furnish the necessary additional information. On August 27, 1973, the agency informed Gilbert that Rusch was interested in the counter offer and asked for further information concerning the counter offer. Gilbert stated he would gather the information and provide Russell Meerdink with it.

Later the same day Gilbert informed the agency that First Central had no further interest in carrying on negotiations with Rusch. Within a week of the cancellation of the agency's authority to deal with Rusch, Gilbert contacted Rusch and sold the Calumet county farm to Rusch for $120,000.

The complaint alleged that First Central's authorization to the agency on August 24, 1973, to continue to negotiate with Freeland Rusch extended the time for fulfilling the listing contract and modified its terms with respect to purchase price or, in the alternative, that First Central wrongfully terminated the contract and prevented the agency from completing performance.

In *Falk v. Whitewater*, 65 Wis.2d 83, 85, 221 N.W.2d 915, 916 (1974), we stated:

"The oft-repeated general rule regarding the construction of complaints when challenged by demurrer is that the pleadings:

" '. . . are to be liberally construed with a view to substantial justice to the parties and are entitled to all reasonable inferences in favor of the pleadings which can be drawn from the facts pleaded. . . . Where this court reviews an order overruling a demurrer made on the ground that the complaint did not state a cause of action, it gives the complaint a liberal construction in favor of stating a cause of action. . . .' *Continental Bank & Trust Co. v. Akwa* (1973), 58 Wis.2d 376, 384, 206 N.W.2d 174. [Citations omitted.]

"However, as stated in *Jennaro v. Jennaro* (1971), 52 Wis.2d 405, 409, 190 N.W.2d 164, '. . . it is to be kept in mind that "[p]leadings are intended to fairly apprise the opposing party of the matters to be tried . . . ." ' "

First Central contends that the listing contract which it drafted did not satisfy sec. 240.10(1), Stats., an extension of the statute of frauds controlling real estate agency contracts. If this contention is true, the cause of action must fail, and the demurrer should have been sustained because the agency has grounded its claim on the listing contract. Contracts which do not substantially comply with this section are void.[1] Sec. 240.10(1) requires that a contract to pay a commission to a real estate broker for selling real estate must: (1) Describe the real estate, (2) describe the price for which it may be sold, (3) state the commission to be paid, (4) state the period during which the broker shall procure a buyer or seller, (5) be in writing, and (6) be subscribed by the person agreeing to pay the commission. The listing contract, which was attached to the complaint, is as follows:

"7/24/73

"Att: Mr. Russell Meerdink

"Please permit this letter to serve the purpose of a contract listing for one month (July 25, 1973 to Aug. 25, 1973) for the express and individual reason of selling through your offices a farm of 160 acres along with real estate and buildings for $100,000.00 and cattle, machin-

---

[1] *Buckman v. E. H. Schaefer & Associates, Inc.*, 50 Wis.2d 755, 768, 185 N.W.2d 328, 335 (1971).

ery and equipment for $50,000.00 from which total of $150,000.00 we will pay to you a 6% selling commission after pro-rating of taxes, insurance, transfer fee, abstracting, and other costs involved in the transfer of property. This commitment is confined to and intended for your negotiation and sale of the farm to one individual named Mr. Freeland Rusch, an executive of Kimberly State Bank, Kimberly, Wis. This is not a general listing and does not obligate us to pay you a commission of 6% should we elect to sell the farm to another buyer. We shall provide legal description, tax and insurance figures, farm income and all other matters of importance to your client upon his expression of interest to pursue the subject. Thank you.

Sincerely,<br>
N. T. Gilbert-Pres.<br>
/s/ N. T. Gilbert"

The only requirement of the statute of frauds in question is whether the contract adequately described the real estate. Repeatedly this court has held that to comply with the statute, the contract or memorandum must be reasonably definite in respect to the property conveyed. *Trimble v. Wisconsin Builders, Inc.*, 72 Wis.2d 435, 441, 241 N.W.2d 409, 413 (1976), and cases cited therein. In this contract the description stated "a farm of 160 acres." This description is inadequate, standing alone, but in *Trimble, supra* at 442, 241 N.W.2d at 414, the court stated:

"Under some circumstances, the inadequacy of descriptions in the contract may be amplified by extrinsic evidence, but only in circumstances where the document itself provides some foundation, link, or key to the extrinsic evidence."

The letter of First Central's president, N. T. Gilbert, which served as the listing contract, stated "[w]e shall provide legal description . . . and all other matters of importance to your client upon his expression of interest. . . ." This statement is a link to extrinsic evidence.

Separate writings may, taken together, satisfy the requirement of sec. 240.10 (1), Stats. *Buckman v. E. H. Schaefer & Associates, Inc.,* 50 Wis.2d 755, 773, 185 N.W.2d 328, 337 (1971); *Mitler v. Associated Contractors,* 4 Wis.2d 568, 573, 91 N.W.2d 367, 370 (1958).

As *Buckman, supra,* indicated, the purpose of this section is to prevent fraud arising from parol testimony as to the terms and conditions of a brokerage contract. An absolute standard concerning integration of documents to satisfy the statute has not been established. The facts of each case and the conduct of the parties controls. *Buckman, supra,* at 773, 185 N.W.2d at 337. The letter written by Gilbert contemplated looking to other documents for an adequate description of the property. If another document or memorandum provided an adequate description, the requirements of the statute were satisfied. We conclude the allegations of the complaint are sufficient to require the issue as to whether the description is adequate should be resolved by subsequent pleadings or trial.

However, it is clear that the agency cannot recover a commission based upon a performance of the contract. The agency did not furnish a buyer ready, willing and able to purchase pursuant to the terms of the listing agreement. The offer submitted by the buyer through the agency was in substantial variance with the terms of the listing agreement or contract.

The complaint alleged alternatively that First Central wrongfully terminated the contract and prevented the agency from performing the contract. First Central contends that, as a matter of law, there was no wrongful termination of the contract. It argues that because sec. 240.10 (1), Stats., was not complied with, a principal may arbitrarily terminate the agreement. It is not clear from the complaint whether sec. 240.10 (1) was complied with. If it was, this argument must fail.

*Peter M. Chalik & Associates v. Hermes,* 56 Wis.2d 151, 161, 201 N.W.2d 514, 519 (1972), noted that an offer in substantial compliance with the listing contract must be made before a broker can recover his commission. First Central contends that because the offer made by the agency on behalf of the purchaser was not in substantial compliance with the listing contract the demurrer should have been sustained. *Chalik* discussed an action for the commission on the contract, whereas the second theory on which the agency complains is not on the contract for commission but for damages for prevention of performance of the contract. An offer in substantial compliance with the listing contract is not a prerequisite when the action is for breach of contract rather than on the contract. In essence, the agency alleges that an offer in substantial compliance was impossible because of the actions of First Central.

■ This court has recognized that a principal may not avoid paying a fairly earned commission if, through his own fault or misconduct, he has prevented the consummation of the contract.

" '. . . [I]t would be manifestly unjust that the principal could avoid paying a commission fairly earned if by his own fault or misconduct or wrongful neglect he has prevented the consummation of his contract with the buyer, and the courts will not sanction such injustice.' " *Winston v. Minkin* 63 Wis.2d 46, 53, 216 N.W.2d 38, 42 (1974). *See also: Dean v. Wendeberg* 175 Wis. 513, 515–16, 185 N.W. 514, 515 (1921).

If the agency can prove that First Central requested further negotiations on other real estate three days before the contract was to expire only to prevent the agency from performing under the contract, it is entitled to recover for the reasonable value of its services.

■ First Central offers other arguments why the demurrer should have been sustained and why the action on the contract must be found legally insufficient. We

need not address these arguments because the complaint stated a cause of action for wrongful prevention of a contract and the demurrer was properly overruled. A demurrer will be overruled when at least one cause of action is stated. *Schweiger v. Loewi & Co., Inc.*, 65 Wis.2d 56, 221 N.W.2d 882 (1974).

*By the Court.*—Order affirmed.